CLERKS OFFICE U.S. DIST. COURT
AT LYNCHBURG, VA
FILED
03/28/2018
JULIA C. DUDLEY, CLERK
BY: s/ F. COLEMAN
     DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
LYNCHBURG DIVISION

| | |
|---|---|
| MONICA SMITH o/b/o J.T., JR., a minor child, ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| v. ) | Civil Action No. 6:17cv31 |
| ) | |
| NANCY BERRYHILL, ) | |
| **Acting Commissioner of Social Security,** ) | |
| ) | |
| **Defendant.** ) | |

## REPORT AND RECOMMENDATION

Plaintiff Monica Smith, on behalf of J.T., Jr., a minor child, filed this action challenging the final decision of the Commissioner of Social Security ("Commissioner") finding J.T., Jr. not disabled and therefore ineligible for Supplemental Security Income ("SSI") under the Social Security Act ("Act"). 42 U.S.C. §§ 401–433. Smith alleges that the Administrative Law Judge ("ALJ") erred by: (1) finding that J.T., Jr. has less than marked limitations in domains I and II; and (2) improperly discounting J.T., Jr.'s credibility. I conclude that substantial evidence supports the Commissioner's decision. Accordingly, I **RECOMMEND GRANTING** the Commissioner's Motion for Summary Judgment (Dkt. No. 20), and **DENYING** Smith's Motion for Summary Judgment (Dkt. No. 18).

## STANDARD OF REVIEW

This court limits its review to a determination of whether substantial evidence exists to support the Commissioner's conclusion that J.T., Jr. was not disabled under the Act.[1] Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001). "Substantial evidence is such relevant evidence as a

---

[1] Under the Act, a claimant under the age of eighteen is considered "disabled" for purposes of eligibility for

1

reasonable mind might accept as adequate to support a conclusion; it consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996) (internal citations and alterations omitted). "In reviewing for substantial evidence, [the court should not] undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [Commissioner]." Mastro, 270 F.3d at 176 (quoting Craig v. Chater, 76 F.3d at 589). Nevertheless, the court "must not abdicate [its] traditional functions," and it "cannot escape [its] duty to scrutinize the record as a whole to determine whether the conclusions reached are rational." Oppenheim v. Finch, 495 F.2d 396, 397 (4th Cir. 1974). The final decision of the Commissioner will be affirmed where substantial evidence supports the decision. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990).

## **CLAIM HISTORY**

Smith, on behalf of J.T., Jr., protectively filed for SSI on April 17, 2013, claiming that J.T., Jr.'s disability began on April 9, 2013, due to asthma and attention deficit-hyperactivity disorder ("ADHD").[2] R. 22, 71, 171, 191. At the time Smith filed for SSI, J.T., Jr. was 5 years old and, at the time of the ALJ's decision, J.T., Jr. was 8 years old, a school age child. R.71.

The state agency denied Smith's application at the initial and reconsideration levels of administrative review. R. 71–79, 81–93. On January 20, 2016, ALJ William Barto held a hearing to consider Smith's disability claim on behalf of J.T., Jr. R. 22–38. Counsel represented J.T., Jr. at the hearing, which included testimony from Smith, who is J.T., Jr.'s mother.

The Social Security regulations provide a three-step sequential evaluation process for determining whether a minor is disabled. 20 C.F.R. § 416.924. First, the ALJ must determine

---

[2] The relevant period begins on April 17, 2013, as SSI benefits are not payable for any period prior to the filing of an application. See 20 C.F.R. §§ 416.202, 416.501.

whether the claimant is engaged in substantial gainful activity; if so, the claimant is not disabled. Id. § 416.924(a), (b). Next, the ALJ must determine whether the claimant suffers from "an impairment or combination of impairments that is severe," if not, the claimant is not disabled. Id. § 416.924(a), (c). To qualify as a severe impairment, it must cause more than a minimal effect on the claimant's ability to function. Id. § 404.924(c). If an impairment is "a slight abnormality or a combination of slight abnormalities that causes no more than minimal functional limitations," then it is not severe. Id. If the claimant has a severe impairment, the analysis progresses to step three where the ALJ must consider whether the claimant's impairment or combination of impairments meets, medically equals, or functionally equals a listing. Id. § 416.924(a), (d). If the claimant has such impairment, and it meets the duration requirement, the claimant is disabled. Id.

On March 17, 2016, the ALJ entered his decision analyzing J.T., Jr.'s claim under the three-step process. R. 22–38. The ALJ found that J.T., Jr. was not engaged in substantial gainful activity and suffered from the severe impairment of ADHD.[3] R. 25. However, the ALJ concluded at step three that J.T.' Jr.'s severe impairment or combination of impairments did not meet or medically equal the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. Id. In making this determination, the ALJ specifically considered Listing 112.11 (ADHD). Id.

When conducting this Step Three analysis, the ALJ must consider the six relevant domains[4] of functioning to determine whether J.T., Jr.'s ADHD functionally equals a listed condition: (1) acquiring and using information; (2) attending and completing tasks; (3)

---

[3] The ALJ found that J.T., Jr.'s asthma is nonsevere. R. 25.

[4] The domains "are broad areas of functioning intended to capture all of what a child can or cannot do." 20 C.F.R. § 416.926a(b)(1).

3

interacting and relating with others; (4) moving about and manipulating objects; (5) caring for yourself; and (6) health and physical well-being. 20 C.F.R. § 416.926a(b)(1). In order for a claimant to be found disabled, marked limitations must be assessed in at least two domains or an extreme limitation assessed in one domain. Id. § 416.926a(a). "Marked" limitation is defined as "more than moderate" but "less than extreme." Id. § 416.926a(e)(2)(i) A minor has a "marked" limitation in a domain when his impairment(s) interferes seriously with his ability to independently initiate, sustain, or complete activities. Id. Extreme limitation is defined as "more than marked." Id. § 416.926a(e)(3)(i). While extreme limitation is the rating given to the worst limitations, it does not necessarily require a total lack or loss of ability to function. Id.

Here, the ALJ, after considering the six functional "domains" concluded that JT. Jr.'s impairments, either individually or in combination, were not functionally equivalent to a listed condition. R. 26–37. The ALJ concluded that J.T., Jr. had less than marked limitations in the domains of acquiring and using information and attending and completing tasks. R. 30–33. The ALJ further concluded that J.T., Jr. had no limitations in the domains of interacting and relating with others, moving about and manipulating objects, caring for yourself, and health and physical well-being. R. 33–37. Accordingly, the ALJ found that J.T., Jr. did not have an impairment or combination of impairments that result in either "marked" limitations in two domains of functioning or "extreme" limitation in one domain of functioning. R. 37. Thus, the ALJ concluded that J.T., Jr. was not disabled. Smith appealed the ALJ's decision, and on February 23, 2017, the Appeals Council denied her request for review. R. 1–3. This appeal followed.

## ANALYSIS

Smith challenges the ALJ's determination that J.T., Jr. had less than marked limitations in the domains of acquiring and using information and attending and completing tasks. Smith also argues that the ALJ erred by improperly discounting her credibility.

### A. J.T., Jr.'s Medical and School History

J.T., Jr. was diagnosed with ADHD in April 2013, shortly before he turned 6, and was prescribed methylphenidate (Ritalin). R. 366–68. At his follow up visits in 2013 through 2015, he generally showed improvement at school and with sustaining attention. R. 363, 358, 347, 333, 32, 409, 419. However, his behavioral issues did not completely resolve with the medication, as noted in a March 2015 office note, "Taking ADHD meds at school with some improvement for focusing and complet[]ing work but still having some behavioral issues." R. 329, 354.

E. Wayne Sloop, Ph.D. completed a consultative examination of J.T., Jr. in August 2013, and found he had severe ADHD without the use of medication, and noted that, even when taking his medication he was "obviously inattentive." R. 318–22. Dr. Sloop found that J.T., Jr. was "highly distractible, has poor concentration abilities, and is moderately disruptive" at school, and impulsive at both home and school. R. 322. In August 2015, J.T., Jr. presented to Horizon Behavioral Health, with Smith stating that he was having difficulty concentrating and following instructions and cried easily. R. 446. On mental status exam, he had appropriate affect stable mood, good concentration, logical thought, and age appropriate intellect. Id. He was diagnosed with ADHD and rule out depressive disorder, with a Global Assessment of Functioning ("GAF") score of 62.[5]

---

[5] The GAF is a numeric scale ranging from 0 to 100 used by mental health professionals to rate social, occupational and psychological functioning "on a hypothetical continuum of mental health illness." Diagnostic and Statistical Manual of Mental Disorders, 32 (4th Ed. Am. Psychiatric Ass'n 1994) ("DSM IV"). A score of 61–70

J.T., Jr.'s teachers completed assessments in kindergarten through third grade, including a Teacher Questionnaire Form which included questions related to each domain of functioning with a corresponding rating key.[6] His kindergarten teacher, Mollie Jordan, completed a Teacher Questionnaire Form and rated him as having "a slight problem" with acquiring and using information and "an obvious problem" with attending and completing tasks. R. 200–207. Ms. Jordan noted that J.T., Jr. was easily distracted and has difficulty attending to tasks independently. His first grade teacher completed a Vanderbilt ADHD Diagnostic Parent Rating Scale, indicating that his overall academic performance in reading, mathematics, and written expression were problematic.[7] R. 226–28. His first grade teacher also noted his overall classroom behavior was problematic regarding his organizational skills, assignment completion, and following directions. Id. In first grade, J.T., Jr. received a final grade of C or higher in all his first grade subjects, including a C in language, a B in reading, and an A, in spelling. R. 230. J.T., Jr.'s second grade teacher, Elizabeth Brown, completed a Teacher Questionnaire indicating that he was on grade level in reading, math, and written language. R. 231–238. When filling out questions related to acquiring and using information and attending and completing tasks, Ms. Brown indicated J.T., Jr. had either no problem or a slight problem, finding he had an obvious problem only with focusing long enough to finish an assigned task, and no serious or very serious problems. R. 232–33. J.T., Jr.'s third grade teacher, Rachel Parr, filled out a

---

suggests mild symptoms or some difficulty in social, occupational, or school functioning. Id. A score of 51–60 suggests moderate symptoms or difficulty in social or occupational functioning. Id.

[6] The Teacher Questionnaire form included a rating key asked the responder to indicate whether, "compared to the functioning of same-aged children without impairments, this child has (1) no problem, (2) a slight problem, (3) an obvious problem, (4) a serious problem, or (5) a very serious problem. R. 200–207 (kindergarten), 231–38 (second grade), 265–72 (third grade).

[7] As noted by the ALJ, this form is unsigned; however, it contains a note indicating that it should be completed by J.T., Jr's first grade teacher. R. 226, 28.

questionnaire dated November 2015 indicating that he was performing only at the second grade level in reading, math and written language, but was receiving no special education services. R. 265–72. Regarding acquiring and using information, Ms. Parr indicated a slight problem overall, with a serious problem in providing organized oral explanations and an obvious problem with reading and writing. R. 266. Regarding attending and completing tasks, Ms. Parr found a range from having no problems to having an obvious problem, but no serious or very serious problems. She found obvious problems related to focusing and completing tasks. R. 267. Ms. Parr noted that J.T., Jr. needed extra help to stay on task and complete tasks. R. 266–67. J.T., Jr.'s third grade reading teacher, Stacey Seals, also filled out a Teacher Questionnaire in January 2016. R. 276–83. Ms. Seals found no problems in either acquiring and using information or attending and completing tasks, but did write, "Occasionally [J.T., Jr.] has to be redirected to task [which is] not a problem in my class which is a small group setting for approximately 30 minutes per school day. R. 278. In third grade, J.T., Jr. received Cs and Ds in reading, math, and science, and As and Bs in spelling. R. 275.

### B. Acquiring and Using Information

Smith argues that J.T., Jr.'s "low grades, reading below grade level, and the consistent opinions of his classroom teachers that [he] has significant difficulties in acquiring and using information" indicate that J.T., Jr. has marked limitations in this domain. Pl.'s Br. at 5, Dkt. No. 19. The Commissioner counters that substantial evidence in the record, including J.T., Jr.'s teachers' opinions, supports the ALJ's finding.

In the domain of acquiring and using information, the Commissioner considers how well a child is able to acquire information, and then use the information learned, including how well a child perceives, thinks about, remembers, and uses information in all settings. See 20 C.F.R.

7

§ 416.926a(g); SSR 09–3p. A school-age child without impairment should be able to learn to read, write, do math, and discuss history and science. The child should be able to using increasingly complex language to share information and ideas with individuals or groups, asking questions, expressing his own ideas, and understanding and responding to others opinions. See 20 C.F.R. § 416.926a(g)(2)(iv); SSR 09-3p.

In explaining his decision that J.T., Jr. had a less than marked limitation in the domain of acquiring and using information, the ALJ referenced the opinions of J.T., Jr.'s teachers from kindergarten through third grade, who generally found no serious or very serious limitations in this domain, but instead found either no problem, a slight problem, or an obvious problem.[8] R. 31–32. The ALJ considered J.T., Jr.'s grades in the 2015-2016 school year, which ranged from Ds to As, writing, "Despite [J.T., Jr.'s grades in the current school year, his teachers generally noted only an obvious or slight problem in this domain. He does not have an [individualized education program ("IEP")"] at this time, and he only received out-of-classroom support for reading." R. 32. The ALJ also gave partial weight to the opinions of the DDS physicians who found less than marked limitation in the domain of acquiring and using information at the initial level, and no limitation at the reconsideration level. R. 30, 75, 88. Thus, the record supports the ALJ's determination that J.T., Jr. had a less than marked limitation in the domain of acquiring and using information.

### C. Attending and Completing Tasks

Smith argues that J.T., Jr.'s grades, his mother's observations, and teacher questionnaires documenting his "significant difficulties in focusing long enough to finish activities or tasks"

---

[8] Regarding acquiring and using information, J.T., Jr.'s third grade teacher, Ms. Parr indicated a serious problem in providing organized oral explanations; however, this was the only subset in which Ms. Parr found a serious problem, and she determined that overall J.T, Jr. had only a slight problem in acquiring and using information. R. 266. No other teachers found any serious or very serious problems. R. 266.

8

show that he has a marked limitation in the domain of attending and completing tasks. Pl.'s Br. at 8–9, Dkt. No. 19. The Commissioner counters that the record supports the ALJ's determination.

In the domain of attending and completing tasks, the Commissioner considers how well the child is able to focus and maintain attention and how well he is able to begin, carry through and finish activities, including the child's pace at which he performs activities and the ease with which he changes activities. See 20 C.F.R. § 416.962a(h). The Social Security Administration ("SSA") indicates that a school-age child without impairment should be able to focus his attention in order to "follow directions, remember and organize [ ] school materials" and complete assignments. Id. § 416.926a(h)(2)(iv). The child should be able to "concentrate on details", "not make careless mistakes", "stay on task", and be able to participate in group sports and complete chores. Id.; SSR 09-4p.

In explaining his decision that J.T., Jr. had a less marked limitation in the domain of attending and completing tasks, the ALJ referenced his teachers' opinions regarding his behavior. R. 33. J.T., Jr.'s teacher for the 2015–16 school year noted no serious or very serious problems in the domain of attending and completing tasks. R. 267. Likewise, his teachers in the 2012-13 and 2014–15 school years noted no serious or very serious problems. R. 202, 233. In fact, in the 2014–15 school year his teacher recorded mostly no problems or slight problems in this domain, with an obvious problem only in the area of focusing long enough to finish an assigned activity or task. R. 233. The ALJ gave only partial weight to the state agency doctors' conclusions, which found marked limitation in this domain at the initial level and a less than marked limitation at the reconsideration level. R. 30, 75, 89. The ALJ conceded that the evidence "does support a finding that [J.T., Jr.] has some limitations in this domain due to his diagnosis of ADHD" but emphasized that he showed improvement with medication adjustments. Id. The ALJ

9

noted that J.T., Jr. "maintained successful performance levels for [the majority of the] work habits" in the 2015–16 school year, including having proper materials, being organized and prepared, completing class work and homework on time, participating in class activities, and working neatly.[9] R. 33, 275. The record generally indicates that J.T., Jr. had no serious problems in the domain of attending and completing tasks, and I conclude that the ALJ's determination is supported by substantial evidence.

Here, the ALJ properly followed the three-step sequential evaluation process and I find substantial evidence to support the ALJ's opinion that J.T., Jr. was not markedly limited in two or more domains or extremely limited in one domain of functioning.

**D.  Credibility**

Smith argues that the ALJ's credibility findings are not supported by substantial evidence, complaining that the ALJ failed to make specific findings regarding Smith's credibility and failed to cite to specific evidence supporting his conclusion that Smith was not entirely credible.[10] The ALJ stated:

---

[9] Academic performance levels for work habits are successful, progressing, and needs improvement. R. 275. The ALJ did acknowledge that J.T., Jr. received a "progressing" level, instead of a "successful" level for the work habit of listening attentively and following directions in his second term. R. 275.

[10] I note that in March 2016, the Social Security Administration superseded the language of SSR 96-7P when it ruled in SSR 16-3P that "credibility" is not appropriate terminology to be used in determining benefits. See Titles II & XVI: Evaluation of Symptoms in Disability Claims, SSR 16-3P (S.S.A. Mar. 16, 2016) (effective March 28, 2016). "[W]e are eliminating the use of the term 'credibility' from our sub-regulatory policy, as our regulations do not use this term. SSR 16-3 at *1. In doing so, we clarify that subjective symptom evaluation is not an examination of an individual's character." Id. Thus, under SSR 16-3P, the ALJ is no longer tasked with making an overarching credibility determination and instead must assess whether the claimant's subjective symptom statements are consistent with the record as a whole.

Here, because SSR 16-3P's effective date was after the ALJ's consideration of J.T., Jr.'s claim and both sides and the ALJ use the term credibility, I will analyze the ALJ's decision based on the provisions of SSR 96-7p, which required assessment of the claimant's credibility. See Keefer v. Colvin, No. CV 1:15-4738-SVH, 2016 WL 5539516, at *11 (D.S.C. Sept. 30, 2016. However, I note that the methodology required by both SSR 16-3P and SSR 96-7P, are quite similar. Under either, the ALJ is required to consider J.T., Jr.'s (or his mothers) report of his own symptoms against the backdrop of the entire case record; in SSR 16-3, this resulted in a "credibility" analysis, in SSR 16-3, this allows the adjudicator to evaluate "consistency."

10

> After considering the evidence of record, [I] find that [J.T., Jr.'s] medically determinable impairments could reasonably be expected to produce the alleged symptoms; however, the statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible for the reasons explained below.

R. 27. Thereafter, the ALJ outlines his reasons for this determination, including treatment records showing that J.T., Jr.'s symptoms have been "relatively well controlled with medication" from 2013 through 2015. R. 29. The ALJ also noted J.T., Jr.'s and his mother's testimony that J.T., Jr. has two best friends at school, gets along with his classmates but not his sisters, has chores but is easily sidetracked from completing them, and plays video games. R. 27. While the ALJ noted Smith's testimony that J.T., Jr. has mood swings, loses focus, gets frustrated easily, and "does not do school work [and] cannot sit still for long periods of time", the ALJ supported his credibility findings by pointing to records reflecting that J.T., Jr. is doing better at school and with his focus since beginning medication. R. 26–27, 29, 49, 363, 356–67, 409, 419. For example, in May 2013, the record from his nurse practitioner indicates "[J.T., Jr.] is doing much better at school, keeping up with his work and his focus and ability to progress since he is on medication . . . the teacher is moving him up to a higher group." R. 563. The ALJ noted J.T., Jr. needed a medication adjustment after his doctor's appointment in April 2014 where the treatment note stated he was struggling in school. R. 29, 354. However, by May 2014, his nurse practitioner notes he is "doing much better at school with second dose of medication" (R. 356), and she notes in May 2015 that "according to his mother, [J.T., Jr.] is doing well in school on his current medication, and with IEP support."[11] R. 409. Further, contrary to Smith's allegation that the ALJ "ignores the teachers' opinions that overall [J.T., Jr.] has significant limitations" in the domains of acquiring and using information and attending and completing tasks, the ALJ

---

[11] In July 2015, the nurse practitioner noted that the school had determined that J.T., Jr. would not have an IEP. R. 419.

11

thoroughly discussed J.T., Jr.'s teacher's assessments of his limitations in these domains, including, with one exception, noting no serious or very serious problems.[12]

A reviewing court gives great weight to the ALJ's assessment of a claimant's credibility and should not interfere with that assessment where the evidence in the record supports the ALJ's conclusions. See Shively v. Heckler, 739 F.2d 987, 989–90 (4th Cir. 1984). "If the claimant is a child who does not describe, or cannot adequately describe, his symptoms, the ALJ 'will accept as a statement of [the child's] symptom(s) the description given by the person who is most familiar with [the child], such as a parent, other relative, or guardian.'" Barnes ex rel. T.J. v. Colvin, No. 4:12-CV-254-D, 2014 U.S. Dist. LEXIS 3876 (E.D.N.C. Jan. 13, 2014) (unpublished) (quoting 20 C.F.R. § 416.928(a)). "The ALJ must make specific findings concerning the credibility of the [caregiver's] testimony, just as he would if the child were testifying." Id. (quoting Dew ex rel. K.W. v. Colvin, No. 4:12-cv-129, 2013 U.S. Dist. LEXIS 122536, at *21, 2013 WL 4523617, at *8 (E.D.N.C. Aug. 27, 2013) (unpublished)). The ALJ is not required to accept the caregiver's testimony about the child's symptoms at face value. Meadows v. Astrue, No. 5:11CV00063, 2012 U.S. Dist. LEXIS 115150, at *30, 2012 WL 3542536, at *9 (W.D. Va. Aug. 15, 2012) (citing SSR 96-7p, 1996 SSR LEXIS 4) (noting that the ALJ must "weigh [a claimant's testimony about her symptoms] along with all of the evidence, including not only the objective medical evidence, but statements and other information provided by physicians or psychologists and other persons about her symptoms and how they affect her and any other relevant evidence in the case record.") Further, a reviewing court will defer to the ALJ's credibility finding except in those "exceptional" cases where the

---

[12] As discussed previously, Ms. Parr, J.T., Jr.'s third grade teacher, noted a serious problem in providing organized oral explanations in the domain of acquiring and using information. R. 266.

12

determination is unclear, unreasonable, contradicts other findings of fact, or is based on an inadequate reason or no reason at all. See Bishop v. Comm'r of Soc. Sec., 583 F. App'x 65, 68 (citing Edeco, Inc. v. NLRB, 132 F.3d 1007, 1011 (4th Cir. 1997)).

After reviewing the entire record, I find that substantial evidence exists to support the ALJ's determinations regarding credibility.

## CONCLUSION

J.T., Jr.'s mother brought this disability claim seeking benefits for J.T., Jr. based upon his ADHD diagnosis. The Commissioner does not contend that J.T., Jr. has no deficits, but maintains that substantial evidence supports the ALJ's conclusion that J.T., Jr. does not have marked impairment in either the first or second domain of functioning. I will not reweigh the evidence where, as here, the ALJ has considered the evidence of record and explained in detail the basis for the decision. Thus, it is **RECOMMENDED** that an order be entered **AFFIRMING** the final decision of the Commissioner, **GRANTING** summary judgment to the defendant, **DENYING** plaintiff's motion for summary judgment, and **DISMISSING** this case from the court's docket.

The clerk is directed to transmit the record in this case to the Honorable Norman K. Moon, United States District Judge, and to provide copies of this Report and Recommendation to counsel of record. Both sides are reminded that pursuant to Rule 72(b), they are entitled to note any objections to this Report and Recommendation within fourteen (14) days. Any adjudication of fact or conclusion of law rendered herein by the undersigned that is not specifically objected to within the period prescribed by law may become conclusive upon the parties. Failure to file specific objections pursuant to 28 U.S.C. § 636(b)(1)(C) as to factual recitations or findings, as well as to the conclusion reached by the undersigned, may be construed by any reviewing court as a waiver of such objection.

Entered: March 28, 2018

*Robert S. Ballou*

Robert S. Ballou
United States Magistrate Judge